Isidor Wasservogel,
Spec. Bef. This is an accounting action whereby the obligations, if any, presently due and owing by each of the parties as the result of a joint venture among them is to be determined by the court.
In or about April, 1951 plaintiff, defendant Julian, and one Darvin entered into a joint venture agreement for the sale of certain arms and equipment to the government of Guatemala. The agreement, among other things, provided that plaintiff and Darvin were to share equally between themselves 60% of any profits derived by the joint venture, while defendants were to receive the remaining 40% of such profits. There is nothing in the agreement concerning the apportionment of losses, if any were sustained by the joint venture.
The principal controversy among the parties concerns the disposition of the sum of $100,000 given by the government of Guatemala to the individual defendant Julian in part payment for the future delivery to it by the joint venture of 12 armored vehicles and certain munitions. Although Julian concedes the receipt of the $100,000, it is his contention that he returned this money to the government of Guatemala because of the joint venture’s inability to comply with the terms of the delivery of the armored vehicles due to the cancellation by the United States State Department of the required export license.
An analysis of the record shows that Julian’s testimony concerning his alleged return of the $100,000 payment to the government of Guatemala is replete with vagueness and contradiction. *332 At first he stated that the money was returned by him to the Guatemalan Ministry of National Defense. Thereafter, he changed his testimony and stated that at the request of the government of Guatemala, he caused the funds to be transferred to a firm known as “Rexim” in Geneva, Switzerland.
No physical evidence of the return of the $100,000 was produced by either defendant, although Julian stated to the court that his bank drafts and other documentary records would corroborate his testimony. At the conclusion of the trial, almost one year ago, Julian was given an opportunity to obtain and to produce any physical record which would support his statements concerning the return of the $100,000, either to the government of Guatemala or to the Swiss firm. To date, he has failed to do so. Significantly, this lawsuit is more than six years old. In the opinion of the court, it seems that if such records or documentary proof were in existence, as alleged by Julian, defendants could have and should have obtained them by this time for the purposes of the trial. In the absence of such proof, Julian’s bare assertion that he returned the $100,000 must be rejected and this sum of money be deemed an asset of the joint venture for which he has failed properly to account.
- Thus, the credible testimony and documentary evidence establish that, including the $100,000 hereby deemed to be in the possession of Julian, a gross total of $243,331.56 was received by the joint venture. Of this amount, $58,424.20 represents moneys advanced by plaintiff and Darvin. Twenty-five thousand dollars thereof was expended by Julian in acquiring the armored vehicles. In accordance with the terms of the joint venture agreement, after deducting the “ expenses ” of the joint venture, including the sum of $17,504 expended by Julian for “ Weapon-set ammunition ’ ’ and the above-stated $25,000 for the armored vehicles, less the return of their contributions to plaintiff and Darvin, which amounted to $58,424.20, there remains a distributable profit of $83,979.16.
As above noted, plaintiff is entitled to 30% of these profits which amounts to $25,193.75. In addition thereto, plaintiff is entitled to the sum of $29,212.10, representing one half of the return of the investment made by him and Darvin, making a total of $54,405.85 as plaintiff’s share of the distributable profits. The record establishes, however, that plaintiff received from the joint venture only the sum of $37,157.05. Thus, there is now due and owing plaintiff from funds of the joint venture a balance of $17,248.80.
There is no merit to defendants ’ claim that plaintiff executed a general release of all obligations arising from the joint *333 venture. The purported release (Exhibit C) is not a general release and the words “This is cancelled” which appear thereon, clearly refer only to the paper on which they are written. All that was cancelled thereby was a supplemental agreement by plaintiff to pay Julian $900 for a proposed trip to Europe and Julian’s agreement to accept a certain percentage of any profits derived therefrom. There is nothing in the exhibit which remotely connects this document with the agreement of joint venture here involved. Furthermore, it is to be noted that defendants’ own witness, Darvin, a party to the joint venture, testified that Exhibit C was not a general release but pertained only to the contents of the exhibit itself.
Judgment, accordingly, is rendered in favor of plaintiff against defendants for the sum of $17,248.80.
Defendants may have a 30-day stay of execution.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.